We are now recording. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honors, the first case on the docket this morning is 2-22-0176. The people of the state of Illinois, Plaintiff Appellee v. Juan C. Avendano, Defendant Appellate. Arguing on behalf of the Appellant, Ms. Amaris Danek. Arguing on behalf of the Appellee, Ms. Stephanie Hoyt Lee. Thank you. Ms. Danek, you may proceed. Thank you, Your Honors. Good morning, Your Honors and Counsel, and may it please the Court. My name is Amaris Danek with the Office of the State Appellate Defender, and I represent Juan Avendano, the Appellant, in this matter. In this case, the state charged Mr. Avendano with three identical carbon copy counts of predatory criminal sexual assault. During the trial, the state presented the evidence in their case as a single generic course of conduct, a description of one thing that happened, quote, every day. They did not make any attempt to describe three incidents that would qualify as separate predatory acts or link any of the three individual charges to those acts. Did they have to do that? Yes, Your Honor, they did have to do that. Why? The reason for that is that Illinois has not enacted any statute that would punish a single course of conduct in a specific way. To the extent that the state wanted three distinct convictions, everyone needed to know what the evidentiary was for each of the three distinct convictions. But in the opening statement, didn't the prosecutor indicate that this happened many times and practically daily? Yes, Your Honor, they did indicate that in the opening statement. So what more did they need to do to prove different offenses if they were the exact same behavior? They needed to prove that three incidents happened and they needed to alert the jury that they were being asked to decide three separate and distinct incidents. So essentially, in the initial indictments, there was no distinction. For example, that there was a first separate and distinct act or a second separate and distinct act. Even if there had been, those indictments were not shared to the jury. And so the jury was not put on notice, essentially, other than the statements that the prosecutor made in opening statement, which itself was not a jury instruction, that they're being asked to determine a separate evidentiary basis for three discrete but identical incidents of abuse. In fact, the state intentionally, based on the evidence and the way that it came out at trial, that they did not present those incidents of separate predatory acts, they asked to remove any distinction from the jury verdict forms. And the court agreed to do that. And so to the extent that the state intended at the outset to prove three discrete separate incidents, they did not do that with the evidence they presented at trial. And then they did not do that with the instructions that they provided to the jury. Mr. Danik, the three times the jury found the defendant guilty of crimes, they didn't happen all in the same day, did they? I, it's not clear, Judge, from those, it did not, it's not clear from those jury verdicts, whether the event they found, they found it's, I'm more concerned with, is it evident in the record? You made reference to what the state's attorney or the assistant state's attorney said. And I think in my own personal opinion, I'm more concerned about what the evidence was. And I believe the evidence was that the kindergarten student victim testified that it happened daily. And it happened for quite a length of time, which meant that instead of being three transactions in one day, it was three transactions over multiple days. Am I wrong? I don't believe that you're wrong at all, Justice McLaren. The issue though, that distinguishes this case from other cases, such as the people versus Orian Foster is that there is no way to distinguish, for example, that one incident happened in a different place, one incident happened in a different house or a different location in the classroom. Therefore, it's not clear, even if these incidents happened over a continuing course of multiple days, whether the jury found him guilty of one single incident, rather than three separate incidents, no matter how many days they occurred over. And the reason for that, how could they find guilty of three different incidents? When it's the same incident that I'm a little confused. I mean, you're talking on Strawbridge. I think you're trying to go where Strawbridge went, which were overlapping offenses. We're not talking about overlapping offenses here. We're talking about multiple offenses on different days. She said almost every day. So how would they have come to the conclusion that it happened, that it's the same offense? That's my confusion. Maybe you can clear that up. Absolutely, Justice. The reason that that's a concern is because the jury was not instructed that way. And so when they had three identical verdict forms with the instructions about what they needed to find for predatory criminal sexual assault, it's not clear that those three separate verdict forms represented three separate convictions. Again, they didn't have benefit of the charges. And so for all we know, they needed as lay people as the jury, they thought maybe they needed three original copies of one signed jury form, one for the defense, one for the court, one for the prosecution. We don't know because the jury wasn't instructed. Again, that's just a random hypothetical. We have no idea. And so that's the fundamental problem. Let's say they would have that ultimate decision would have been nonsensical because they would have both found him guilty and not guilty of the same offense. And so the failure on the part of the state to distinguish those three, that is where the error lies because no one knows what he was convicted of. Was there a bill of particulars sought in this case? No, Your Honor, there was not as far as I as far as I thought there wasn't it was denied, but I could be wrong. It's possible I would I would need to review the record. I apologize on that. You relied on Foster, but Foster actually is not in your favor. Foster is a case where the court rejected the exact argument that you're making right now. Correct. In terms of the one act one discuss or address the the double jeopardy problems that I think are inherent in that's a different issue. Now you're talking about double jeopardy. But Foster rejected the argument you're making right now that there should have been charged different different charging documents stating different things because the victim in that case said he touched her more than one time. And during closing arguments, the prosecution made that clear. So Foster doesn't vote in your favor on the issue that we're talking about right now. If you want to go to double jeopardy, let's talk about double jeopardy. I can address Foster briefly, Your Honor. In that case, Foster analyzed people versus Strawbridge and discuss the issue in Strawbridge, which was that was an overlapping time period and and found that Strawbridge did not apply to the situation where there was a completely overlapping time frame. However, that really is the crux of the problem, because it is, in fact, a completely overlapping time period. We do not know whether this whether the jury convicted him of one offense in that completely overlapping time period because there was no differentiation in the instructions of the verdict form that they were charged with finding three individual discrete evidentiary basis for three separate incidents. And the state admitted that they didn't present their case that way. They said there were not three incidents of predatory sexual assault. There were not three acts that would support that. Therefore, they wanted that distinction in the verdict forms to be taken out. However, I'm sorry. Are you done speaking? Yes, Your Honor. It seems like you're arguing that the three verdicts had to have different dates on them. Am I misunderstanding your argument? Yes, Your Honor, respectfully. They did not need to have specific dates. Illinois courts have held that a specific date is not an element of this type of sexual assault crime. They did not need to have specific dates. However, there needed to be some distinction, some way for the jury to potentially convict Mr. Avendano or acquit Mr. Avendano in something other than an all or nothing approach. They needed to have something that, for example, that they were asking for a first separate and distinct act, a second separate and distinct act, a third separate and distinct act. And that wasn't covered during closing arguments? No, not well, Your Honor, at all. The state briefly made a reference that the evidence showed that it happened more than three times. But the state also said, you don't have to believe that it happened every day. Well, how many days did they have to believe that it happened? No one, correct. They said it happened more than three times. But again, the instructions, those were not jury instructions. The judge made it clear, closing argument is not instructions to the jury. And the jury did not, was not read the indictment. They were not aware of the counts. Even if the attorneys were aware at the very beginning and the outset of the case, it was their understanding that there were supposed to be three incidents. There was never any effort to make the jury aware of that. And so that's the crux of the problem in this case, is that no one knows exactly what the jury found. And it's the jury that has to convict the defendant, not the subjective knowledge of the defense attorney at the outset of the case, or presumably the intent of the prosecution had they intended, which it seems that they did to prove three separate and distinct acts, which was not supported the way that's not the way that they directed their witness or the evidence came out and they admitted that. Are you saying that each verdict form had to have a fact that distinguished the three incidences into separate transactions? Or are you saying that the totality of the record does not establish that the jury was informed that they had to determine that there were three transactions? Your Honor, the totality of the record did not inform the jury that they had to determine three separate instances. Just like the totality of the record, the evidence presented did not clarify three specific instances, rather it was a continuing course of conduct. And so there did not need to be some different fact in each of the three occurrences. It is possible that the state could have charged him with three identical occurrences, but it needed to have been clarified in the verdict forms and in the instructions that there was a first separate and distinct act, a second separate and distinct act, and third. There did not need to be any other differentiation. There didn't need to be a date. This is the bare minimum, absolute bare minimum that the state's attorney is responsible when they choose to prosecute a case this way, so that the totality of the record can be looked at in the future to determine what was he convicted of. So does that then mean that the all three convictions should be vacated or just two of the three? Your Honor, we're asking that two of the three convictions be vacated. And the reason for that is that in terms of a reasonable doubt argument, in terms of a potential basis for all three to have been vacated, honestly, the standard of review on appeal, the Illinois case law that's held that the testimony of a single witness is sufficient to potentially convict, would have to show that no reasonable juror could have found him guilty of even a single count of predatory case. There's no presidential case law in Illinois that deals with these two specific issues, both the one act, one crime, and the double jeopardy. This gets into a little bit the second argument. That was the result in Valentine versus Ponto, which is a federal case. That was the result in multiple other states that have confronted this exact issue. The result was to throw out all but the one conviction that could potentially be supported by the record. You may proceed. Okay. So the due process problems with the way the state charged and conducted this trial really manifested itself in two interrelated ways. We've discussed the one act, one crime issue, but there was also a violation of the defendant's constitutional right to be protected against double jeopardy because no one can tell one count or one conviction from the other. Double jeopardy includes not only protection from a second prosecution, it also provides protection from multiple punishments in the same offense in a single proceeding. Again, because the jury was not instructed that it needed to determine guilt as to the three separate and distinct identical incidents, the jury hardly could have signed one verdict form but not the other two. Looking at the totality of the record, all that we have is a continuing course of conduct, no specific incidents, and three identical verdict forms that do not clarify that the jury found him guilty of three distinct incidents. For example, it would be clear, I think, based on Illinois precedent, that had the state chosen to bring these three charges successively, if they had chosen to bring one charge that was identical with a continuing course of conduct, a second charge then after that trial had been completed, and then a third one, it would have been clear that those second two prosecutions would have been barred by the principles of double jeopardy. How does the state get to do the same thing except all at once? They still relied on a single course of conduct for three cases. Unlike a number of cases where Illinois courts have found that double jeopardy is prevented by looking at the record. Again, for example, that one incident took place on a couch, one incident that was described took place in a different house. That way you could look at the record and say, okay, you know, there's still the problem with the jury forms in this case, but for the purposes of looking at the actual testimony that came out, it was the exact same for every single incident. And so there's no way to point and say, this incident happened here, this happened here, this happened here. And so your time is up. I thought you were going to close unless there's any questions. Thank you. Would you please close? Yes, Your Honor. The violation of the due process right to be protected against double jeopardy. Ultimately, if the state wants three separate convictions, the state must prevent their case this way. This case is about fundamental due process right and the state's requirement to do the absolute bare minimum to protect that right of every defendant that comes in front of them. Thank you, Your Honors. And for these reasons, we ask the court to vacate two of Mr. Avendano's three convictions for predatory criminal sexual assault. And as it pertains to the third argument, remand the case for a new trial on that remaining count. Thank you. You'll have an opportunity to make rebuttal. Ms. Lee, you may proceed. Good morning, Your Honors and counsel. May it please the court. It's important to note at this point, what has not been said by the defense. The defense is not saying that the evidence was insufficient to prove three separate counts as to this child. The defense is also not responding fully to the state's request that you would take Foster as persuasive authority. Up until argument today, I didn't hear any attempt to even distinguish it. It was not in the briefs. Foster does say that this was proper. You look at the way, you look at the digitality of the circumstances, you look at the words that the child used throughout, and you look at how the case was in fact tried. And those are exactly what we're asking this court to do here. How do you distinguish Valentine? Valentine, well, first of all, it's not persuasive. It would be at most also persuasive here. What you have is precedent in Illinois that says you have to, in terms of the double jeopardy, you have to look at DeLorenzo, which is number one, what was tried here? And that was an Illinois Supreme Court case. So you'd say what was tried here? What is the record going to show? Don't it were in the unlikely event they were going to haul this victim back into court and make her testify all over again for additional charges, then you would have the record, you would have all of this. There are safeguards with the way it was charged here that there wouldn't be another prosecution. Absolutely. Absolutely. And the thing is, is that they were given three separate verdict forms. Those verdict forms were read out separately. This particular jury actually signed a not guilty verdict for a different charge. So we know that they knew how to do that. They didn't get three verdict forms or three sets for that particular charge. And the state particularly said on that charge, we are saying it only happened once, which is what the testimony of the victim using words like all the time, a lot every day. Every time he smelled his finger after he did this. And so you do have the all year, I told my parents all the times he did that. What you also have, if you were going to piecemeal the evidence, which we don't believe does need to be done, but you also have her testimony that it was when she was five. And it was also when she was six and it was from the front and also from the back. And those would be like page 830, 902 and 835 of the record. So were your honors to disagree with our position, which we suggest you should not because Foster is very much similar here. Then, you know, we would still have at least those two, if not more. But when she does say every day, all the time. And in terms of, I mean, could the state have come and put out foundation to show every single day they were together in the classroom? And, you know, I don't think that would make for a very easy trial or, but it could theoretically, sure. But what you have here is, you know, she was with their, he was her kindergarten teacher for the entire year. There's no dispute about that. He, there's no dispute that in both her 11510 evidence, in her report to her parents, which is also evidence because of the 11510 and in her testimony before the court, which was credited that this happened many, many, many times. And I, and I think that that is sufficient. And I think that in addition in Foster, this court had cited a GAT case, which also was very similar. And again, you have de Lorenzo, you also have a prohibition against advisory opinions. So to the extent that defense is asking you to make an advisory opinion right now as to what would happen in some future prosecution as to double jeopardy, that's really speculation. And it would be an advisory opinion, you know, by this court, which, which should not be done. Also, also in their brief, relies on Crespo. Crespo. Yes, was Crespo the individual shots, I believe. Okay. The stabbing, stabbing, sorry, multiple stabbings. And so in that you would have, you'd have multiple stabbings, a single date, not portrait partitioned in closing argument or in instructions. They were the same act, weren't they? They were in the same exact course of conduct, same day, same act. Yes. Was that the case here? No, no. I mean, it was very clear that this was on more than one occasion. And again, especially when you add in, you know, the whole year all the with, you know, even with multiple stabbings, there are occasions where you can apportion those out if there's a time gap or some other thing. But here, that's not even the case. That's not even what the people tried to do. And the prosecution knowing all the evidence, knowing the theory of the case, knowing how they just chose to try it made it very clear. Victim feels like it happened every day. Victim says it happened every day. This was a full year of kindergarten. However, we're not, you know, we understand this is a small child. We're using her explanations, her words, which were allowed to do under Letcher and under Foster and all those cases. So what we're asking you to do is find that this happened at least three times. And the state was incredibly clear about that in their closing argument. And yes, in fact, you know, the case law does say that you look at the closing argument and the way the case was tried. And as you compared it to CRISPO, it was tried as a single incident, multiple stab wounds, all in one event. What is our standard of review here? How would we reverse the trial court? Well, I think this is interesting because for the 1F1 crime, they're saying that it was second prong plane error, I believe. So actually, you would have to find that this was a clear and obvious error. And it's not here because of all the case law, the evidence and the way it came in. To the extent that they're sort of now saying that they're not sure we even proved three, I don't know that that was argued prior. You know, that would be a sufficiency of the evidence, like most favorable to the people and such. Due process violation, I believe it would be a de novo review on your part as well. So that would be, I think, the three, you know, separate standards of review. To the extent you're looking at argument three, it was a little bit, we haven't talked about that, but it was a little bit piecemeal. A little more sufficiency of the evidence, but also on the DCFS issue. Yes, I would like to. Go ahead. Oh, sorry. I'm sorry. I apologize. No, no, no. If you want to talk about that DCFS. I do. I do. Go ahead. The case that is most on point for that would be Nickel. Nickel was the same victim. But also with Nickel, what ended up happening was that there was the child. That defendant did not have access to that child. So it was clearly not correct. So that's one distinction here is that this defendant did have access to these children. And we know that. And during the time period alleged that other just Nichols, there was an alibi defense wasn't there? I believe so. And I think that they actually proved that that he didn't have access during the false allegation. The other issue here with why you look at it differently is had they were the defense was still able to fully impeach A.A. with all of the evidence that led them at the time to not believe out A.A. Now you have L.R. come forward. So it's sort of a matter of, you know, how many times do the children have to come forward and say the emperor has no clothes before the adults are finally believing it? Even with L.R., they gave all these reasons why he was this hero. But the point is that when the impeachment evidence came forward, it would have been cumulative of why they didn't believe her at the time. The other thing is that even if they had been allowed to do that, it would have opened up a huge for the state to say, well, now we believe her. Now we've charged her. And now we can probably even show the one, the old, the video of her, which wasn't going to come in because the charges were severed. Now it's going to come in, you know, as further prior consistent statement to rebut a claim of the fabrication, all of those things. Well, it's basically a trial within a trial. It would have absolutely become that. But the fact of the matter is they got to call all these I find it sad the way that that happened to that poor little girl who had the brief was came forward and was brave. You know, did they get everything they wanted to get in through that impeachment? I mean, yes, yes. That's the state's perspective as well. Yes. So it would have been cumulative. But just saying and it also really saying an unfounded report. I understand However, it's still a little on the edge of saying a credibility of one witness saying whether to believe another. And again, if they did that, we would have had to have been able to bring that witness forward and say, hey, we believe her now. And unfortunately, we didn't believe her then. And, you know, these teachers who were rallying around him and came forward to testify, you know, they were also they were also being sued. So to the extent that they wanted to testify one way, and you wanted to go after the victim's parents for suing, you know, you also had the defendants, all of them here from that civil suit, having a stake in this as well. So, you know, I don't I don't think that certainly this was not an unfair trial. There was some overly zealous. Well, the defense feels it was an unfair trial, because they felt that the the judge ruled against them on every step of the every step of the way. Right. And I think what you had is you had some overzealous advocacy here, which was a strategy, I think the defense attorney was I mean, the judge, the trial judge does have an obligation to keep out inadmissible or improper evidence. Most of there were many, many sidebars. There were some, some comments, I'm not even sure they're fully preserved here. But to the extent that they are, you do have to really look at them in context, the defense was trying to, I mean, look even just at their opening statement, oh, this was a liar, his hero, he lost his job, you can't do that. And so throughout the entire trial, they were trying to get that evidence so that they, you know, you can't unring the bell. And that is what was happening here. It was obviously, in some senses, a strategy, there's no claim that that was an effective assistance, certainly. And what you had was them trying to continually show these two children as liars. And that was those a lot of the evidence they wanted in was improper. Is she a bad student? Did she have some, you know, conduct with some kindergarten boy, which number one would have been totally different conduct. Number two is rape shield. And number three, it's not, you know, it's not the same act, it was some other act. And it was a child. And they couldn't even make up mind whether they thought that was false. So I think that here, he did have a fair trial, we did prove at least three counts, the jury was well aware of what they needed to do, and they did their job. And was it improper for the trial court to take a break during his closing argument? Did they have to do that? At that point? Yes, I think so. Because you also have the complaint here that he kept that the judge kept insulting them. So what the judge was trying to do during that break was, this is why I'm making this instruction. This is what you're repeatedly doing that you shouldn't be doing. And here's why. So he couldn't have the judge could not have said that in court, or that would have been a huge argument here. So we took the break, I forgetting the pages offhand. But if you look at the length of the closing argument, after that break was taken, it was long. So it wasn't like, oh, right, right in the midst. And you know, broke up this, this, you know, line of thought, because when they came back, they had a full blown opportunity to do a closing argument. And there was no time limit put on that, or any kind of other limitations on that. It was the one break. And I think if you read the court to adjust address that in that manner. Unless there are further questions, we we absolutely proved three acts, there is no problem with double jeopardy here and the defendant received a fair trial. And we would ask this court to affirm. I have no further questions, Justice McLaren. Very well, thank you. Thank you. Miss Danek, you may proceed with rebuttal. Thank you, Your Honors. The first thing I'd like to address is the state citation of people versus de Lorenzo in their response to the double jeopardy argument. And de Lorenzo, the facts are not the same as in this case at hand, there were no identical indictments. It dealt simply about the definitions and elements contained in the indictments. The issue is not that there were three identical indictments. And so it's neither the facts or the procedural posture of the case at hand. The same with the other cases that the state cites from Illinois with regard to the double jeopardy issue, the state does not explain how those cases are even related to an issue of identical indictments and refusing to tell jury that they're being asked to decide three separate incidents. What exactly, just so I'm clear, what exactly would be a perfect three perfect different indictments in this case? You have the same acts basically, correct? If they're the same acts, Your Honor, one example, and again, this is simply an example, is that the state could say that the defendant in a first separate and distinct act, knowingly committed X, Y, and Z, the second indictment would say in a second separate and distinct act, and the same would be communicated to the jury. And so the point of this case is that that's absolutely bare minimum, we're not saying the state needed to prove some difference or ask, you know, it's the way they presented their case. And, you know, this is not a situation of hide the ball from the jury. Frankly, in terms of if there are three different indictments, doesn't that kind of infer that there are three separate and distinct acts? I believe that the defense attorney did infer that those were three separate and distinct acts, which is why he raised the issue to say the jury also needs to be told it's the jury that's going to convict him. The jury was not read. They told I mean, throughout the trial, you had testimony of a child, it wasn't great. You had 115 testimony, which certainly set out that there were three separate and distinct acts. The testimony that was set out was a continuing course of conduct. It was a single, it was a single description, a single description of a single incident, disagree with the state the way they characterized front and back. That was the way that she characterized every single time that happened. It happened every day. And so, again, but if they were the exact same act, what can you do? I mean, he or she, are you going to try and say it differently when it was the same act every time to distinguish that there's a separate and distinct act? Yes, Your Honor, because the jury needed an opportunity to consider each separate and distinct act individually. And so when it's the same identical evidence put on for each of the three indistinguishable acts, um, there was no way for the jury to convict him other than really in an all or nothing approach, because, again, if they had acquitted him of one, you would have had an identical verdict form convicting him and acquitting him of an identical incident. And that's really the crux of the problem is that this is a right of a defendant to for a jury to convict him beyond a reasonable doubt of what the state's charging him. And the bare minimum is that the jury understand that they need to find a separate and evidentiary basis for each of those charges, even if the evidentiary basis is the same, they need to be told there are three separate charges. And really, that falls squarely at the feet of the prosecution. There are cases in Illinois where the prosecution charges identical incidents under a statute where it's clearly explained by the judge, where the verdict forms, you know, again, this is not an impossibility. This is not a high burden at all that the state has been asked to do. The state has a responsibility to protect the due process rights of every defendant that comes in front of it, not to prove up something vague at trial, and then try to amend the verdicts in a way to confuse the jury and say, we still want our three discrete convictions, even though we haven't really shown that there's three separate acts that can correlate to those three separate convictions. You know, essentially, the state really doesn't get to have it both ways. And in terms of Crespo, the way that Crespo relates, yes, Crespo did deal with three separate stab wounds that occurred on the same day. And the court discusses that. But Crespo also stands for the proposition that a single that presenting a same day, or arguably on multiple different days of course of conduct, again, does not necessarily support an individual count three separate counts that the state carves up out of a single description of a single event. How could one touching turn out to be three different events? Um, it's not the issue is that it's if it had been made clear, and that was the jury's decision, the issue is we don't know what the jury found. We don't know what the if the jury found that three separate touchings were three separate events, or if there was one individual event, because they were identical, they were identical verdict forms, and they were not informed, there were three charges against him. And so that's, that's the issue, not that it couldn't have potentially, you know, for example, supported a single a single charge. And that's a little different than Crespo, isn't it? It is it is it's, it's analogous in the terms of presenting the case as a single continuous course of conduct. And how can that if the state chooses to prove if the state chooses to present its case as a continuing course of conduct, they cannot carve up individual and individual convictions out of that, which is essentially what they tried to do within this case, they tried to carve it up at the end, realizing they only put on a continuing course of conduct, there were no separate predatory acts, they admitted that as such to the judge. And so they wanted to still carve it up and have those three individual convictions. And that's what we're arguing was inappropriate and a violation of Mr. Avendano's right to due process in this case. Thank you. Thank you, Your Honors. I have no other questions. I have one or two or three. It's your burden on on appeal to establish error, is it not? Yes, Your Honor. What is the burden or the standard on review for your contention that the three indictments along with the three verdicts does not constitute evidence of three separate transactions that would support three separate convictions? Is it clear and convincing as a question of law? What what exactly are we supposed to be looking at this through what color lens? Yes, Your Honor. The issue, the issue both of one act, one crime and double jeopardy can be reached under second prong plain error. And in terms of what you're looking at, the the review of a double jeopardy issue. I'm sorry, if you make it is probably a mixed question of law and fact. Yes, Your Honor. But the question of whether multiple convictions can enter against the defendant, that's a question to be reviewed de novo. That's essentially a question of what were the what were the facts presented? And then what is the law as to double jeopardy? And so to the Your Honor? Yes, we'd ask you under that. Thank you. Any other questions? Thank you. We'll take the case under advisement and render a decision and have time. Mr. Marshall, will you please close out the case? Yes, Your Honor, right away.